# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

STANLEY B. LUCKETT,

       Petitioner,                        Case No. 07-10118

v.                                         Honorable John Corbett O'Meara

C. EICHENLAUB,

       Respondent.

_____/

## OPINION AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Stanley B. Luckett has filed a *pro se* petition for the writ of habeas corpus under 28 U.S.C. § 2241. Petitioner is a federal prisoner at the Federal Correctional Institution (FCI) in Milan, Michigan. His habeas petition challenges a federal policy governing inmates' eligibility for placement in community corrections centers (CCC), also known as residential re-entry centers (RRC), or halfway houses. The Court has determined on the basis of published decisions by four federal circuit courts of appeal that the policy and regulations in question are invalid. Accordingly, the habeas petition will be **GRANTED**.

## I. Background

Petitioner pleaded guilty in the United States District Court for the District of Minnesota to the possession with intent to distribute cocaine. On December 12, 2003, United States District Judge Ann D. Montgomery sentenced Petitioner to a 120-month term of imprisonment, followed by three years of supervised release.

In April 2006, Petitioner asked to be placed in a community corrections center (CCC) or

home confinement. Respondent denied Petitioner's request and stated that Petitioner would be eligible for placement in a CCC on July 5, 20011. Petitioner appealed the warden's decision, but the Regional Director for the Bureau of Prisons stated that placement in an RRC would be possible only during the last ten percent of Petitioner's sentence served and that such placement could not exceed six months. It went on to state that his eligibility would be considered no later than eleven to thirteen months prior to his release date of January 5, 20012. The Administrator for National Inmate Appeals agreed and affirmed the Regional Director's decision on November 30, 2006.

Petitioner now seeks to have the Court invalidate the Bureau's policy and regulations on placement in a CCC. His grounds for relief read:

> I. The B.O.P. is violating my right to due process by failing to consider my request for CCC placement in accordance with 18 U.S.C. 3621(b).

Respondent urges the Court to deny the habeas petition on the grounds that Petitioner is has been categorically excluded from placement in a CCC pursuant to a valid regulation.

## II. Discussion

### A. Claim under § 2241

The first question is whether Petitioner's claim is properly brought under § 2241. Although it is true that the purpose of the writ of habeas corpus is to challenge the fact or duration of confinement and not the conditions of confinement, the United States Supreme Court, in *Preiser v. Rodriguez*, 411 U.S. 475, 499 & 499 n.14 (1973), stated:

> [t]his is not to say that habeas corpus may not also be available to challenge such prison conditions. When a prisoner is put under additional and unconstitutional restraints during his lawful

> custody, it is arguable that habeas corpus will lie to remove the
> restraints making the custody illegal.

*Id*. at 499 (internal citations omitted). Section 2241 of Title 28, United States Code, is the proper remedy for challenging the execution or manner in which a sentence is served, *United States v. Peterman*, 249 F.3d 458, 461 (6th Cir. 2001), and execution of a sentence includes challenges to the place of imprisonment, *see United States v. Jalili*, 925 F.2d 889, 893 (6th Cir. 1991), and prison transfers, *Jiminian v. Hash*, 245 F.3d 144, 146 (2d Cir. 2001). Because Petitioner is challenging the place of confinement and the Bureau's failure to transfer him to a CCC, his case is properly before the Court under § 2241.

### B. No Constitutional Right to Placement in a CCC

The Court notes that prisoners possess "no inherent constitutional right to placement in any particular prison or in any particular section within the prison system." *Williams v. Bass,* 63 F.3d 483, 485 (6th Cir. 1995). The Supreme Court has "rejected the notion that '*any* change in the conditions of confinement having a substantial adverse impact on the prisoner involved is sufficient to invoke the protections of the Due Process Clause.'" *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (quoting *Meachum v. Fano*, 427 U.S. 215, 244 (1976)) (emphasis in original). "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montayne v. Haymes*, 427 U.S. 236, 242 (1976). Therefore, Petitioner has no federal constitutional right to placement in a CCC.

### C. Relief on Other Grounds

Petitioner would be entitled to habeas relief if he can show that he is in custody in

violation of some other federal law. 28 U.S.C § 2241(c)(3). For the following reasons, the Court has determined that Petitioner's statutory rights have been violated.

### 1. The Statutes and Regulations in Question

Section 3621(b) of Title 18, United States Code, requires the Federal Bureau of Prisons to "designate the place of the prisoner's imprisonment." The statute also provides that:

> **Place of imprisonment.**–The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering–
> **(1)** the resources of the facility contemplated;
> **(2)** the nature and circumstances of the offense;
> **(3)** the history and characteristics of the prisoner;
> **(4)** any statement by the court that imposed the sentence–
>     **(A)** concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>     **(B)** recommending a type of penal or correctional facility as
>     appropriate; and
> **(5)** any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b).

A related statute provides:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

18 U.S.C. § 3624(c).

Until December of 2002, the Bureau of Prisons considered inmates to be eligible for placement in a CCC for as much as six months at the end of their sentences, regardless of the length of their sentences. *Fults v. Sanders*, 442 F.3d 1088, 1089 (8th Cir. 2006); *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235, 240 (3d Cir. 2005); *see Levine v. Apker*, 455 F.3d 71, 75 (2d Cir. 2006) (noting that, before a policy change in December 2002, the Bureau of Prisons placed some federal prisoners in CCCs for more than the last ten percent of their sentence or for more than six months). However, on December 13, 2002, legal counsel for the Department of Justice concluded that 18 U.S.C. § 3621(b) did not authorize the Bureau of Prisons to place an inmate in a CCC at any time and that inmates were limited by 18 U.S.C. § 3624(c) to living in a CCC for ten percent of their total sentence or six months, whichever was less. *Levine*, 455 F.3d at 75; *Fults*, 442 F.3d at 1089; *Woodall*, 432 F.3d at 240.

Subsequently, the Bureau of Prisons adopted a policy consistent with legal counsel's conclusion. However, the First and Eighth Circuit deemed that policy contrary to 18 U.S.C. § 3621. *See Elwood v. Jeter*, 386 F.3d 842, 847 (8th Cir. 2004) (holding that 18 U.S.C. § 3621(b) authorizes the Bureau of Prisons to transfer prisoners to CCCs at any time during their incarceration); *Goldings v. Winn*, 383 F.3d 17, 28-29 (1st Cir. 2004) (holding that "18 U.S.C. § 3621(b) authorizes the [Bureau of Prisons] to transfer [the plaintiff] to a CCC at any time during his prison term" and that "[t]he [Bureau's] discretionary authority under § 3621(b) is not subject to the temporal limitations of 18 U.S.C. § 3624(c)"). Thus, the Bureau of Prisons promulgated two new regulations, which became effective in February of 2005.

The first regulation reads:

> (a) This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement. The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.
> (b) As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC) (also known as "halfway houses") and home confinement.

28 C.F.R. § 570.20.

The second regulation provides:

> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.
> (b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example residential substance abuse treatment program (18 U.S.C. § 3621(e)(2)(A)), or shock incarceration program (18 U.S.C. § 4046(C)).

28 C.F.R. § 570.21. Those regulations impose the same durational limits on a prisoner's confinement in a CCC as did the 2002 policy, but they do so pursuant to the Bureau's broad discretion to make categorical decisions.

### 2. Petitioner's/Respondent's Arguments

Petitioner claims that the Bureau's regulations and policy of not placing prisoners in community confinement until the last ten per cent or six months of their sentences is contrary to congressional intent. He asserts that the Bureau of Prisons may not establish categorical rules and that it must apply the factors in 18 U.S.C. § 3621(b) when considering whether he is entitled to placement in a CCC.

Respondent argues that the Bureau is authorized to exercise categorical rulemaking, and because Petitioner is currently designated as an "IN" custody inmate, he requires the second highest level of security and staff supervision. Respondent contends that the Bureau, in making that custody classification, considered a multitude of factors including, but not limited to (1) the existence of detainers, (2) the severity of the offense, (3) the number of months until the prisoner's release date, (4) the inmate's criminal history, (5) any history of escapes or attempts, (6) any history of violence, (7) the inmate's voluntary surrender for service of his sentence, (8) the inmate's age, (9) the inmate's educational level, and (10) the inmate's drug or alcohol abuse. Respondent argues that, after considering all the factors, the Bureau determined that Petitioner's custody level should be classified as "IN."

### 3. Analysis

An agency's interpretation of a statute ordinarily is entitled to deference. *Chevron v. Nat'l Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984). However, when reviewing an agency's interpretation of a statute, courts must first ask "whether Congress has directly spoken to the precise question at issue." *Id*. at 842. If Congress has not directly addressed the issue or if the statute is silent or ambiguous on a specific issue, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id*. at 843.

The intent of 18 U.S.C. § 3621(b) is clear. It requires the Bureau of Prisons to consider five factors when designating a prisoner's place of imprisonment. Because Congress' intent is clear from a reading of § 3621(b), "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-843. There is no need to defer to the agency's interpretation in light of the clear and

unambiguous language of § 3621(b). *Fults*, 442 F.3d at 1090; *Wedelstedt v. Wiley*, 477 F.3d 1160, 1167 (10th Cir. 2007).

However, even if the Court were to assume that the statute is ambiguous, the regulations in question are not based on a permissible construction, because they take a categorical approach to placement of prisoners and do not allow for consideration of the five factors set forth in 18 U.S.C. § 3621(b). *Woodall,* 432 F.3d at 249. Thus, the regulations are invalid. *Wedelstedt*, 477 F.3d at 1165 (concluding that 28 C.F.R. §§ 570.20 and 570.21 "impermissibly conflict with the clear and unambiguous congressional intent articulated in 18 U.S.C. § 3621(b) and are, therefore invalid"); *Levine*, 455 F.3d at 87 (holding that, "in transferring an inmate to a CCC or any 'available penal or correctional facility,' the [Bureau of Prisons] must consider the factors set forth in § 3621(b), without reference to 28 C.F.R. § 570.21"); *Fults*, 442 F.3d at 1092 (stating that the Bureau's regulation conflicts with 18 U.S.C. § 3621(b) and is invalid); *Woodall*, 432 F.3d at 237 and 244 (concluding that the 2005 regulations, which categorically limit the amount of time an inmate may be placed in a CCC, are unlawful because they do not allow the Bureau to consider the five factors in § 3621(b)).

The grammatical construction of 18 U.S.C. § 3621(b) compels the conclusion that the Bureau must "be informed by the list of five Congressional concerns." *Levine*, 455 F.3d at 81; *accord Fults*, 442 F.3d at 1091-92; *Woodall*, 432 F.3d at 245. The legislative history also supports a reading that consideration of the five factors in 18 U.S.C. § 3621(b) is mandatory. *Levine*, 455 F.3d at 82; *Woodall*, 432 F.3d at 245-46. In fact, a Senate Judiciary Committee report "disavows any restriction on the [Bureau's] exercise of discretion. . . ." *Levine*, 455 F.3d

1. Section 3621(e)(2)(B) allows the Bureau to reduce a prisoner's sentence up to one year

if the prisoner has successfully completed a substance abuse treatment program and has not been convicted of a violent offense. "The *Lopez* Court was careful to state that 18 U.S.C. §3621(e)(2)(B) . . . did not identify any criteria for the [Bureau of Prisons] to use in either granting or denying early release to individual nonviolent offenders." *Wedelstedt*, 477 F.3d at 1168.

Furthermore, while 18 U.S.C. §§ 3621(b) and 3624(c) may appear to contradict each other,

> [t]he statutory command in § 3621(b) stands alone as a clear and unambiguous articulation of congressional intent regarding the process by which the BOP should make placement and transfer determinations. *Accord Levine,* 455 F.3d at 82; *Woodall,* 432 F.3d at 246. Although § 3624(c) surely imposes an affirmative obligation on the BOP, whenever practicable, to place an inmate in a CCC or other form of community confinement as the inmate's release date nears, § 3624(c) has no bearing on whether a CCC may be considered as a place of imprisonment at some earlier point in a prisoner's period of incarceration. *See Prows v. Federal Bureau of Prisons*, 981 F.2d 466, 469 (10th Cir. 1992)] (interpreting § 3624(c) as imposing a mandatory obligation on the BOP to facilitate a prisoner's pre-release transition, but explicitly stating § 3624(c) does not affect the agency's discretion in determining an individual prisoner's place of imprisonment prior to the pre-release period); *accord Woodall,* 432 F.3d at 250 ("[Section] 3624[ (c)] does not determine when the BOP should *consider* CCC placement, but when it must *provide* it."); *Elwood,* 386 F.3d at 847 ("Under § 3621(b), the BOP *may* place a prisoner in a CCC for six months, or more. Under § 3624(c) the BOP *must* formulate a plan of pre-release conditions." (emphasis added)); *Goldings v. Winn,* 383 F.3d 17, 26 (1st Cir. 2004) (same). . . .
>
> [Section] 3624(c) has no bearing on whether §§ 570.20 and 570.21 are consistent with the § 3621(b) statutory scheme for BOP placement and transfer determinations.

*Wedelstedt*, 477 F.3d at1166 (alterations in original with the exception of the full name and citation for *Prow*).

Against that backdrop, Petitioner contends that the Bureau has not considered the factors as outlined in 18 U.S.C. § 3621(b) in evaluating his custody level, and that he is currently eligible for both RRC and home confinement. Specifically, Petitioner contends that under the current policy, the BOP is unable to take into account his efforts to rehabilitate himself and his individual needs. Petitioner is not asking for an early release but for consideration of his request.

### III. Conclusion

For the reasons given above and in *Wedelstedt*, *Levine*, *Woodall*, and *Fults*, the Court concludes that 28 C.F.R. §§ 570.20 and 570.21 conflict with the clear intent of 18 U.S.C. § 3621(b) and, therefore, are invalid. A categorical approach to the placement of inmates in CCCs, which is based solely on the length of a prisoner's sentence, is inconsistent with 18 U.S.C. § 3621. *Levine*, 455 F.3d at 86; *See also Holloway v. Marberry*, No. 06-12516, 2007 WL 1880386 (E.D.Mich. June 27, 2007) (Friedman, C.J.)

Accordingly, the Bureau of Prisons is directed to consider immediately whether Petitioner is eligible for transfer to a CCC. The Bureau of Prisons is not required to place Petitioner in a CCC for more than the last six months or ten percent of his sentence, but it must at least consider in good faith the factors in 18 U.S.C. § 3621(b) without regard to 28 C.F.R. §§ 570.20 and 570.21.

For the reasons stated, the Court **GRANTS** Petitioner petition for habeas corpus.

**SO ORDERED**.

s/John Corbett O'Meara
United States District Judge

Date: October 24, 2007

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, October 25, 2007, by electronic and/or ordinary mail.

                                                          s/William Barkholz
                                                          Case Manager